IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MARGARET DEAN                                                                    PLAINTIFF

V.                                                              CIVIL ACTION NO. 2:05CV246-P-A

JO ANNE B. BARNHART, Commissioner of
Social Security                                                                  DEFENDANT

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), plaintiff Margaret Dean seeks judicial review of the

decision of the Commissioner of Social Security denying her application for Social Security

Disability Insurance and Supplemental Security Income (SSI) benefits.  This action is brought

pursuant to 42 U.S.C. § 405(g).  The district court's jurisdiction over plaintiff's claim rests upon 28

U.S.C. § 1331.

## STATEMENT OF THE CASE

Plaintiff Margaret Dean protectively filed her application for disability insurance benefits on

September 26, 2000, alleging that she became disabled on September 1, 2000, due to back-related

ailments.  Her claim was denied initially and on reconsideration, and plaintiff requested a hearing

before an administrative law judge.  The plaintiff's original hearing on this matter was held before

administrative law judge (ALJ) Jonathan H. Leiner on January 4, 2002, where she was represented

by attorney Gary Parvin.

Born on August 12, 1972, the plaintiff was twenty-nine years of age at the time of the ALJ's

first decision issued on June 26, 2002, wherein the ALJ found that the claimant was not disabled

within the meaning of the Social Security Act.  The plaintiff's request for review by the Appeals

Council was denied on November 1, 2002; thus, the ALJ's decision became the final decision of the Commissioner and was appealed to this court. At the request of the Appeals Council upon their more thorough review of the case, the District Court remanded plaintiff's claim on July 8, 2003, for both a new administrative hearing and new decision and further ordered the Commissioner to instruct the ALJ to (1) include reports from treating sources within the medical record, (2) obtain evidence from a medical expert on the question of whether plaintiff's impairments met or equaled any impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, and (3) to identify limitations associated with the plaintiff's impairments. *Dean v. Barnhart*, Civil Action No. 2:02cv265-M-B (N.D. Miss. July 8, 2003). The court also instructed the ALJ to obtain additional vocational information as necessary.[1]

Accordingly, a new administrative hearing was held on February 17, 2005, and a new decision was issued on June 24, 2005, in which the ALJ again found that the plaintiff was not disabled under the Social Security Act in that she retained the functional capacity to perform her past relevant work. The Appeals Council denied plaintiff's request for review on November 16, 2005, and the plaintiff then filed the instant appeal. Plaintiff's brief asserts that the ALJ erred upon remand in (1) failing to find that plaintiff suffered from a minimally severe impairment sufficient to meet the requirements of Listing 12.05C and (2) crediting an nonexamining consultant's opinion over a treating physician's opinion.[2]

------

[1]All of these particularized instructions found within the 2003 remand order originate within defendant's response to plaintiff's brief in which defendant requested that the action be remanded.

[2]These two issues are, in fact, intertwined, and this court discusses the proper weight to be afforded to a treating physician within the context of analyzing whether the plaintiff suffered from a minimally severe impairment.

**DISCUSSION**

A.    Standard of Review

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence in the record as whole and whether the Commissioner used the correct legal standard. *Legget v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000)). However, a decision is not substantially justified if the facts are not fully and fairly developed. *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing *Newton v. Apfel*, 208 F.3d 448, 458 (5th Cir 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence leans against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

B.    Five-Step Sequential Evaluation Process

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five.  *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).  First, plaintiff must prove she is not currently engaged in substantial gainful activity.  20 C.F.R. § 404.1527. Second, the plaintiff must prove her impairment or combination of impairments is "severe" in that it has more than a minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1527; *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  At step three, the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  20 C.F.R. § 404.1520(d).  Fourth, the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(e).  If the plaintiff is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work. 20 C.F.R § 404.1520(f).  If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff must then prove that she cannot, in fact, perform that work.  *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

C.    Whether the Plaintiff Is Entitled to Disability Insurance Under Title II

In her response, the defendant contends that the plaintiff cannot be found disabled for Title II purposes due to the fact that her insured status expired on June 30, 1999, and plaintiff alleges a

disability onset date of September 1, 2000.[3] The plaintiff counters that the issue of her onset date is a factual question that is within the exclusive province of the ALJ and implicitly argues that the court should not address this question at the present moment because the case must be remanded in order for the ALJ to complete additional analysis due to his failure to find that the plaintiff suffered from a severe impairment other than mental retardation. (Pl.'s Reply at 6.) As an initial matter, the court finds the plaintiff's logic unpersuasive. If, in fact, the plaintiff is ineligible for consideration under Title II due to the timing of her disability onset, then it is entirely irrelevant that the ALJ found her not disabled. More important to the court is that the plaintiff does not rebut the defendant's assertion and citation to the record, R. at 328, 274,    wherein the plaintiff is identified as having herself alleged a 2000 onset date.[4]

A claimant's disability as defined under the Social Security Act must begin on or before the expiration of her disability insured status in order for the claimant to qualify for disability insurance benefits under Title II. *Ivy v. Sullivan,* 898 F.2d 1045, 1048 (5th Cir. 1990) (citing *Milam v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)). There is no requirement under Title XVI, however, that claimants prove the existence of a disability on or before the expiration of their insured status. *Gabaldon v. Barnhart*, 399 F.Supp.2d 1240, 1250 (D.N.M. 2005) (citations omitted). Consequently, this court finds that the plaintiff curtailed her own claim under Title II for disability insurance benefits by

---

[3]The defendant's response actually lists plaintiff's onset year as 2001; however, the court assumes that this is a unintentional, typographical error due to the defendant's citation to two different pages within the record that identify 2000 as the year of onset.

[4]An application for disability insurance benefits completed by plaintiff cites September 1, 2000, as her disability onset date. R. at 112.

alleging a disability onset date of September 1, 2000, that falls after the expiration of her disability insured status. The court shall, from this point further, only consider plaintiff's viable claim for SSI benefits under Title XVI.

      D.    <u>Whether the Plaintiff Suffered From a Minimally Severe Impairment Sufficient to Meet the Requirements of Listing 12.05C</u>

      1.    *Construing Listing 12.05C*

The ALJ found that the plaintiff was not employed in substantial gainful activity and that she was an individual with mild retardation, thereby satisfying the first and second steps of the sequential evaluation process but that she failed to meet the third step, which the plaintiff claims was error. (R. at 274.) Under Listing 12.05C, [5] which is considered at step three, a claimant is disabled if she possesses a "valid verbal, performance, or full scale IQ of 60 through 70" and suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation or function." 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ noted that the plaintiff's verbal, performance and full-scale IQ scores were 69, 62 and 63, respectively, and concluded that she failed to meet or equal the requirements of Listing 12.05C "because the record evidence fails to demonstrate that the claimant experiences any physical or other mental impairment which imposes any additional and significant functional limitations." (R. at 280.) Thus, by implication, the ALJ must have found that the plaintiff met the first prong of Listing 12.05C. Regardless, this court finds that the plaintiff's standard score of 63 satisfied the first prong of Listing 12.05C.

---

[5]Part 16 of Title 20 of the Code of Federal Regulations pertains to Title XVI of the Social Security Act and identifies that the Social Security Administration will utilize the listings found in Appendix 1 to Subpart P of Part 404 when determining whether a claimant seeking SSI benefits satisfies step three of the sequential evaluation process. 20 C.F.R. § 416.920. Thus, the court relies upon Listing 12.05C and authorities relating to 12.05C as it is, in fact, the pertinent listing.

The plaintiff correctly identifies the absence of Fifth Circuit law construing the term "significant" as used in the second prong of Listing 12.05C. The plaintiff asserts that many circuits hold that an impairment additional to mental retardation satisfies the second prong if it satisfies the severity test set forth in the step two of the sequential evaluation process. Thus, the plaintiff relies upon *Stone v. Heckler,* wherein the Fifth Circuit construed "severe" as used in 20 C.F.R. §§ 404.1520 and 404.1521, to define "significant." 752 F.2d 1099, 1101 (5th Cir. 1985). In *Stone*, the court held that an impairment is not severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* The defendant also relies upon *Stone*, and this court agrees that, given the absence of case law to the contrary, an impairment that meets the definition of severe as construed in *Stone* satisfies the "significant" standard of Listing 12.05C.[6] The court is mindful that *Stone* presents a low threshold and that, having satisfied the first prong of the listing, the plaintiff need only prove the existence of an impairment that slightly interferes with her ability to work in order to satisfy the second prong.

2.    *The Proper Weight Afforded to a Treating Physician's Findings*

The plaintiff's main argument concerns the evidence of her treating physician Dr. Pravin Patel. Plaintiff argues that the ALJ erred when he chose to afford great weight to Dr. Bethea, a nonexamining medical consultant, and essentially disregarded Dr. Patel's medical findings. Because of the minimal showing required under *Stone*, the plaintiff would have satisfied the second prong

---

[6]For instance, a Social Security Ruling on obesity states that obesity found to be severe as defined under step two of the sequential evaluation process also satisfies the requirement for an impairment imposing an additional and significant work-related limitation in listing 12.05C. SSR 02-1p, "Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity."

of Listing 12.05C and would have been awarded benefits at the 2005 hearing had the ALJ ascribed any meaningful weight to Dr. Patel's findings.

As noted, in its remand order, this court directed the ALJ to include reports from treating sources within the medical record, to obtain evidence from a medical expert on the question of whether plaintiff's impairments met or equaled any impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, and to identify limitations associated with the plaintiff's impairments. *Dean v. Barnhart*, Civil Action No. 2:02cv265-M-B (N.D. Miss. July 8, 2003). In response to that order, the ALJ directed interrogatories to Dr. Bethea, which he answered after reviewing the plaintiff's medical records on June 27, 2004. (R. at 366.)

Without examining her, Dr. Bethea opined due to the "paucity of findings on repeated exams/MRI scan, CAT scan" that the plaintiff did not suffer from any back-related impairment and that there existed "no reason for any real limitation – subjective complaints out of line with objective evidence." (R. at 369.) However, the plaintiff underwent a second MRI examination of the lumbar region on January 10, 2005, R. at 382, which was used in part by plaintiff's treating physician Dr. Patel in rendering his opinion that the plaintiff suffered from chronic lower back pain syndrome with radiculopathy and was physically limited. (R. at 385.) The MRI showed "minimal to moderate degenerative changes" in the lower lumbar area, "[s]mall tears . . . within the annular ligaments" at the surface of the L4-5 and L5-S1 discs, with "a small central disc protrusion . . . at both levels." (R. at 382.) Dr. Patel opined that it was more medically probable than not that his "diagnosis and assessed limitations . . . were present by her work ending in September, 2000." (R. at 387.) Clearly no other medical source, including Dr. Bethea, considered the results of the 2005 MRI because it had not yet been performed at the time of their consideration.

In his opinion, the ALJ discounted Dr. Patel's findings and afforded Dr. Bethea's opinion an undefined degree of weight that appears considerable. The ALJ specifically found that Dr. Patel's diagnosis was "entirely without objective medical foundation. <u>Neither Dr. Patel's own treatment records nor the remainder of the documentary record presents any clinical findings to substantiate the presence of any lumbar radiculopathy.</u>" (R. at 280.) (Emphasis in original.) The ALJ further stated that Dr. Patel's functional limitations assessment was "grossly disproportionate to his own treatment records and to the remainder of the objective medical evidence," such as the plaintiff's own assertion that she could lift two gallons of liquid. *Id.*

Generally "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995). An ALJ may reject or assign little weight to the opinion of a treating physician when good cause is shown; good cause may exist "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000) (internal citations omitted). In *Newton*, the Fifth Circuit held that the ALJ must consider the following multiple factors pursuant to 20 C.F.R. § 404.1527 before declining to give evidence of a treating physician controlling weight:

> (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician.

*Id.* If the ALJ finds that the treating physician's records are "inconclusive or otherwise inadequate to receive controlling weight" after considering the factors above and "absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Id.* at 453.

The ALJ fulfilled his initial burden under *Newton* regarding the existence of good cause by stating that Dr. Patel's treatment records and the instant record present no clinical findings to substantiate his diagnosis and findings that the doctor's responses to the March 2005 medical source statement questionnaire conflict with the record, his own treatment records, and the plaintiff's own assertions. The ALJ's opinion also contains a careful summary of the medical evidence in this cause, which the court shall construe so as to meet the six factors listed in *Newton* given that all of the requisite information is included in his decision, even though the court would have preferred the ALJ had used more specificity and detail. The court likewise concludes that Dr. Patel's findings seriously conflict with the record as a whole, the plaintiff's own assertions,[7] and Dr. Patel's records. The court is unmoved by the fact that no other physician viewed the 2005 MRI results because the record lacks additional evidence that would support any relation back to 2000 when the plaintiff protectively filed for benefits. Plaintiff was tested and examined repeatedly during this period with unwavering negative results. Furthermore, the ALJ was under no duty to seek clarification or additional evidence pursuant to *Newton* and § 404.1512(e) from Dr. Patel given the fact that the medical evidence contained within the record and summarized by the ALJ included the findings of other examining

---

[7]Plaintiff herself testified that she is able to lift and carry two gallons of liquid for a short distance, comfortably carry a twelve-pack of beverages for a short distance, wash dishes, and sometimes make her bed. (R. at 412-14.)

or treating physicians such as Dr. William Wadsworth and Dr. William Mayers, among others. The court consequently finds that the ALJ properly laid the groundwork to establish good cause for his decision to disregard Dr. Patel's findings.

Based on all of the foregoing reasons, the court finds that substantial evidence in the record as whole supports the ALJ's decision and that the ALJ used the correct legal standards. The record need only contain more than a scintilla of evidence supporting the ALJ's decision in order for this court to deem such evidence "substantial." That is clearly the case here. The undersigned thus finds that the decision of the Commissioner should be affirmed.

## CONCLUSION

The undersigned recommends that the Commissioner's final decision be affirmed as to both the plaintiff's claim for Social Security Disability Insurance under Title II and the plaintiff's claim for Supplemental Security Income benefits under Title XVI. The parties are referred to 28 U.S.C. §636(b)(1)(B) and FED. R. CIV. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

Respectfully submitted, this, the 20th day of June, 2006.

   /s/ S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE